527 S.E.2d 831

**H. Kenneth CARVEY, Jr.; Dennis Caldwell; Leonard Allen; Carol Thom; West Virginia Association of Elementary and Middle School Principals; and West Virginia Association of Secondary School Principals, and Their Individual Members, Plaintiffs Below, Appellees,**

v.

**WEST VIRGINIA STATE BOARD OF EDUCATION; Henry Marockie, in his Official Capacity as State Superintendent of Schools; and Principals Standards Advisory Council, Defendants Below,**

**The Center for Professional Development, Defendant Below, Appellant.**

No. 26217.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 5, 1999.

Decided Dec. 15, 1999.

---

Darrell V. McGraw, Jr., Attorney General, Barbara H. Allen, Managing Deputy Attorney General, Charleston, West Virginia, Attorneys for the Appellant.

J. David Cecil, Hurricane, West Virginia, Attorney for the Appellees.

DAVIS, Justice:

The appellant herein and defendant below, the Center for Professional Development [hereinafter "the Center"],[1] appeals the orders of the Circuit Court of Kanawha County entered on January 15, 1999, and April 1, 1999. In these orders, the circuit court entered declaratory judgment in favor of the appellees herein and plaintiffs below, H. Kenneth Carvey, Jr., and several other similarly situated principals in West Virginia public schools, and the West Virginia Association of Elementary and Middle School Principals and the West Virginia Association of Secondary School Principals, and their individual members [hereinafter collectively referred to as "Carvey"]. The circuit court ruled that W. Va.Code § 18A–3–2c(i) and W. Va.Code § 18A–3A–1(d), when read *in pari materia,* require the Center to provide a stipend to those principals and assistant principals [hereinafter collectively referred to as "principals"] who attend the Center's specialized principal training programs outside of their terms of employment. On appeal to this Court, the Center contends that the circuit court erred (1) by finding W. Va.Code § 18A–3–2c(i) to be unconstitutional in its application as a denial of equal protection to similarly situated school principals and (2) by ruling that a contemporaneous reading of W. Va.Code § 18A–3–2c(i) and W. Va.Code § 18A–3A–1(d) requires the Center to pay stipends to principals participating in its training programs. Upon a review of the parties' arguments, the record designated for appellate review, and the pertinent authorities, we affirm, in part, and reverse, in part, the decision of the Circuit Court of Kanawha

1. When this suit was initially filed in the Circuit Court of Kanawha County, additional parties defendant were named: West Virginia State Board of Education; Henry Marockie, in his official capacity as State Superintendent of Schools; and the Principals Standards Advisory Council. Following various proceedings in the lower court, these additional defendants were dismissed from the litigation, leaving the Center as the sole remaining defendant.

County. Insofar as the circuit court determined the Center to be the entity responsible for paying stipends to Principals Academy participants, we affirm the lower court's orders. However, to the extent that the circuit court found W. Va.Code § 18A–3–2c(i) to be unconstitutional in its application and concluded that the amount of such stipends should be commensurate with the attendees' daily contractual rate of pay, we reverse the lower court's rulings.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts underlying this appeal are largely undisputed by the parties. In 1996, the West Virginia Legislature enacted W. Va. Code § 18A–3–2c (1996) (Repl.Vol.1997), which requires every principal in the State of West Virginia to complete a training program, through the Principals Academy, at least once every four years, to be conducted by the Center for Professional Development.[2] *See also* W. Va.Code § 18A–3A–2b (1996) (Repl.Vol.1997) ("establish[ing] within the center for professional development the 'Principals Academy'"). Of specific import to these proceedings is the language contained in W. Va.Code § 18A–3–2c(i) directing that

[t]he center for professional development may reimburse persons attending the academy for reasonable and necessary expenses. *Additionally, any person whose attendance occurs outside his or her em-*

*ployment term, as defined in section fifteen [§ 18–5–15], article five, chapter eighteen of this code, may be entitled to a stipend to be determined by and paid by the center for professional development:* Provided, That nothing in this section shall be construed to require any specific level of funding by the Legislature.

(Emphasis added). *See also* W. Va.Code § 18A–3–2c(i) (1998) (Supp.1999) (same). During the course of enacting the above-quoted provision, the Legislature amended W. Va.Code § 18A–3A–1(d) (1996) (Supp. 1996) to account for the newly announced duties of the Center: "[i]n accordance with section two-c, article three of this chapter, the center shall be responsible for paying reasonable and necessary expenses *and any stipends* for persons attending the principals academy: Provided, That nothing in this section shall be construed to require any specific level of funding by the Legislature." (Emphasis added). Pursuant to these directives, the Center held a pilot Principals Academy in 1996, and paid most principals who attended the training a stipend of $150.00. The Center represents that, in 1996, the Legislature appropriated specific monies to fund the payment of these stipends.

Thereafter, in 1997, the Legislature amended W. Va.Code § 18A–3A–1(d) by deleting the "and any stipends" language. *See* W. Va.Code § 18A–3A–1(d) (1997) (Repl.Vol. 1997). *See also* W. Va.Code § 18A–3A–1(d) (1998) (Supp.1999) (same). Accordingly, the Center, which held Principals Academy[3] pro-

---

**2.** The pertinent language of W. Va.Code § 18A–3–2c (1996) (Repl.Vol.1997) provides that "[a]fter the first day of January, one thousand nine hundred ninety-seven, and subject to the provisions of subsection (c) of this section, every principal shall complete a training program through the principals academy at least once every four years." W. Va.Code § 18A–3–2c(a). *See also* W. Va.Code § 18A–3–2c(a) (1998) (Supp.1999) (same). Subsection (c) references the academy's funding. *See* W. Va.Code § 18A–3–2c(c) (1996). *See also* W. Va.Code § 18A–3–2c(c) (1998). For further discussion of this attendance requirement, see Section III.A., *infra*.

**3.** W. Va.Code § 18A–3A–2b (1998) (Supp.1999) describes the components of the Principals Academy curriculum:

Training through the principals academy shall include at least the following:

(a) Training designed to build within principals the minimum qualities, proficiencies and skills that will be required of all principals pursuant to the rules of the state board;

(b) Intensive summer training institutes; and

(c) Specialized training and professional development programs for all principals, with special programs for the following principals:

(1) Newly appointed principals;

(2) Principals of schools which have received from the state board temporary or conditional accreditation status or whose schools have been designated as seriously impaired;

(3) Principals subject to improvement plans; and

(4) Principals of schools with significantly different grade level configurations.

*See also* W. Va.Code § 18A–3A–2b (1996) (Repl. Vol.1997) (same). In its appellate brief, the Cen-

grams in 1997 and 1998, did not pay the attending principals a stipend because it believed that the Legislature had relieved it of this obligation.[4] The complaints leading to the instant proceedings surfaced when various principals attending the 1997 Academy learned that some of their number, who had "long contracts"[5] of employment, were essentially being paid to attend the Academy because it was held during their terms of employment. Most of the principals attending this Academy, however, did not have "long contracts," and thus their Academy attendance occurred extraneous to their employment terms.[6]

To challenge this perceived disparity in compensation, certain "short-contract" principals filed the underlying declaratory judgment action in the Circuit Court of Kanawha County. Following various proceedings, the circuit court, by order entered January 15, 1999, rendered an interim Order wherein it found W. Va.Code § 18A–3–2c(i) to be unconstitutional as applied to the extent that the Center had failed to provide stipends for those principals attending the 1997 and 1998 Principals Academies outside. of their contract terms of employment.[7] The court also ruled that those principals who were not under contract during the 1997 and 1998 Principals Academies, and who had not received stipends for their attendance at these training sessions, were entitled to back pay "at their normal contract daily rate of pay last received before attending the Academy." Lastly, the court enjoined the Center from conducting future Principals Academies unless it "provides in addition to statutorily authorized expenses, compensation for such training at the principal or assistant principal's normal contract rate for each day of attendance."

Thereafter, the circuit court held a hearing in this matter and, on April 1, 1999, entered

---

ter represents that its implementation of these statutory mandates results in the provision of training which "consists of a six-day summer session held at three geographic locations, as well as a two-day follow-up session held in December."

4. The Center did reimburse those principals attending the 1997 and 1998 Academies their expenses, including lodging, meals, and materials, in accordance with W. Va.Code §§ 18A–3–2c(i) and 18A–3A–1(d). Though it does not directly state so, the Center intimates that the Legislature did not appropriate specific funds to pay stipends to principals in either 1997 or 1998 as it had done in 1996.

5. W. Va.Code § 18–5–15(a) (1994) (Repl.Vol. 1999) establishes that the employment term for teachers and principals "shall be no less than ten months, a month to be defined as twenty employment days exclusive of Saturdays and Sundays." This section also permits county boards of education to "contract with all or part of the personnel for a longer term," limiting the length of the term to a maximum of forty-three weeks. *Id.* Under the facts of the instant appeal, "long contracts" signify employment terms of more than 240 days, whereas "short contracts" refer to employment terms of less than 240 days.

6. At the 1997 Principals Academy, approximately thirty-one of the 251 attendees had "long contracts." Similarly, in 1998, only thirty of the 301 principals attending that year's Academy had "long contracts."

7. In this regard, the circuit court concluded:

1. The present application of West Virginia Code, § 18A–3–2c, creates classifications which are not rationally based on social, economic, historic or geographic factors and fails to treat all principals within the class established by the present application of the statute equally in regard to compensation.
2. When the constitutionality of [a] statute is questioned, every reasonable construction of the statute must be resorted to by [the] court in order to sustain its constitutionality, and any doubt must be resolved in favor of [the] constitutionality of legislative enactments.
3. The legislative intent is clearly that principals and assistant principals required to attend the Academy under W. Va.Code, § 18A–3–2c, as amended, should do so during the term of their employment contracts and that those who are training at times other than when under their normal employment contract, should be paid a stipend; because the language suggests that some principals may attend outside their regular contract terms, the Court is of the opinion that such attendance was intended to be the exception and not the rule.
4. To the extent that the statute does not require normal contract pay to those attending outside their normal contract periods, but rather "a stipend to be determined by and paid by the center for professional development," and such amount is less than the attendee's normal contract rate of pay it violates the right to equal treatment and the Court finds that the present application of the statute violates the equal protection provisions of Article III, section 10 of the Constitution of the State of West Virginia and the Fourteenth Amendment of the United States Constitution.

the final order challenged in the instant appeal. In this order, the circuit court determined

    1. The Center for Professional Development is the entity charged by West Virginia Code, § 18A–3–2(c)(i) [§ 18A–3–2c(i)] with payment of compensation for principals attending the academy outside their normal employment contract terms.

    2. West Virginia Code, § 18A–3a–1(d) [§ 18A–3A–1(d)] must be read in *pari materia* with Code, § 18A–3–29(c)(i) [§ 18A–3–2c(i)] so that any principal or assistant principal whose attendance occurs outside his or her employment term may be entitled to a stipend to be determined and paid by the Center for Professional Development.

    3. The legislative intent under the aforementioned code sections is that any payments due Academy participants should be paid by the Center for Professional Development.

    4. The fact that the Center is not currently sufficiently funded to provide principals the compensation due does not alter, modify or absolve its obligation to provide court ordered compensation to plaintiffs and the classes they represent as evidenced by the language in West Virginia Code, §§ 18A–3–2c and 18A–3a–1 [18A–3A–1].

The court then reiterated its mandate contained in its January order requiring the Center to provide back pay for the heretofore uncompensated participants in the 1997 and 1998 Principals Academies and stayed its injunctive order to permit an appeal to this Court. From the circuit court's January 15, 1999, and April 1, 1999, orders, the Center seeks appellate relief in this Court.

## II.

## STANDARD OF REVIEW

    Before reaching the merits of the parties' contentions, we first must consider the method by which to review the circuit court's rulings. Procedurally, this case comes to us as an appeal of a declaratory judgment rendered by the lower court. Generally, the aim of a declaratory judgment action

    " 'is to avoid the expense and delay which might otherwise result, and in securing in advance *a determination of legal questions* which, if pursued, can be given the force and effect of a judgment or decree without the long and tedious delay which might accompany other types of litigation.' "

*Cox v. Amick*, 195 W.Va. 608, 612, 466 S.E.2d 459, 463 (1995) (quoting *Harrison v. Town of Eleanor*, 191 W.Va. 611, 615, 447 S.E.2d 546, 550 (1994) (quoting *Crank v. McLaughlin*, 125 W.Va. 126, 133, 23 S.E.2d 56, 60 (1942)) (emphasis added)). We previously have recognized that a *de novo* standard governs our review of a lower court's conclusions of law. " 'Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syl. pt. 2, *Webster County Comm'n v. Clayton*, 206 W.Va. 107, 522 S.E.2d 201 (1999). *See also* Syl. pt. 1, in part, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute … presents a purely legal question subject to *de novo* review."). Due to the predominance of legal issues in a declaratory judgment proceeding, we employ an identical standard of review to such rulings. "A circuit court's entry of a declaratory judgment is reviewed *de novo*." Syl. pt. 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459. Having ascertained the applicable method of review, we now turn to consider the parties' arguments.

## III.

## DISCUSSION

    On appeal to this Court, the Center assigns two errors for our consideration and determination: (1) the circuit court's conclusion that W. Va.Code § 18A–3–2c(i) is unconstitutional as applied and (2) the circuit court's ruling that the Center, and not the individual county boards of education, is responsible for paying a stipend to principals who attend the Principals Academy outside of their contract periods of employment. We

will examine each of these assignments in turn.

### A. *Constitutionality of W.Va. Code § 18A-3-2c(i)*

■ The Center first argues that the circuit court erred by finding W. Va.Code § 18A-3-2c(i) to be unconstitutional as applied.[8] In so ruling, the circuit court determined that the current scheme, whereby some principals receive compensation while attending the Principals Academy, due to their "long contracts" of employment, while other principals, who have "short contracts" of employment, are not compensated during their attendance, constitutes an impermissible denial of equal protection.[9]

■ We begin our analysis of this issue with a review of the principles which guide our determination of constitutional challenges—a delicate task which we do not undertake lightly.

In addressing a claim that legislation is unconstitutional, we start with the fundamental precept that the powers of the legislature are almost plenary: "The Constitution of West Virginia being a restriction of power rather than a grant thereof, the legislature has the authority to enact any measure not inhibited thereby."

*Robinson v. Charleston Area Med. Ctr., Inc.,* 186 W.Va. 720, 725, 414 S.E.2d 877, 882 (1991) (quoting Syl. pt. 1, *Foster v. Cooper,* 155 W.Va. 619, 186 S.E.2d 837 (1972)) (footnote omitted). Extending due deference to our coordinate branch of government, this Court generally presumes that statutes enacted by the Legislature are constitutional. Only when it can be said beyond a reasonable doubt that a law violates the Constitution of this State will we invalidate a legislative enactment on constitutional grounds. *See Rockland Realty Corp. v. Lilly,* 199 W.Va. 674, 677–78, 487 S.E.2d 332, 335–36 (1997) (per curiam); *Farley v. Graney, State Road*

*Comm'r,* 146 W.Va. 22, 33, 119 S.E.2d 833, 840 (1960). Thus,

" ' "[w]hen the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment." Point 3, Syllabus, *Willis v. O'Brien,* 151 W.Va. 628[, 153 S.E.2d 178 (1967) ].' Syllabus Point 1, *State ex rel. Haden v. Calco Awning & Window Corp.,* 153 W.Va. 524, 170 S.E.2d 362 (1969)." Syllabus point 3, *Donley v. Bracken,* 192 W.Va. 383, 452 S.E.2d 699 (1994).

Syl. pt. 7, *Albright v. White,* 202 W.Va. 292, 503 S.E.2d 860 (1998). *Accord State ex rel. Carper v. West Virginia Parole Bd.,* 203 W.Va. 583, 589, 509 S.E.2d 864, 870 (1998); *West Virginia Human Rights Comm'n v. Garretson,* 196 W.Va. 118, 124, 468 S.E.2d 733, 739 (1996). In this regard,

[c]ourts will never impute to the legislature intent to contravene the constitution of either the state or the United States, by construing a statute so as to make it unconstitutional, if such construction can be avoided, consistently with law, in giving effect to the statute, and this can always be done, if the purpose of the act is not beyond legislative power in whole or in part, and there is no language in it expressive of specific intent to violate the organic law.

Syl. pt. 29, *Coal & Coke Ry. Co. v. Conley,* 67 W.Va. 129, 67 S.E. 613 (1910).

■ Where, as here, the precise constitutional challenge at issue involves equal protection concerns, additional tenets guide our inquiry as to the validity of a controverted legislative enactment. "Most legislative classifications, *including those which involve economic rights,* are subjected to a minimum level of scrutiny, the traditional equal protection concept that the legislative classification

---

**8.** See Section I., *supra,* for the pertinent text of W. Va.Code § 18A-3-2c(i).

**9.** The right to equal protection of the law is guaranteed to citizens of this State by both the federal and state constitutions. In the Fourteenth Amendment to the United States Constitution, each State is prohibited from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Likewise, the West Virginia Constitution contains a similar admonition: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." W. Va. Const. art. III, § 10.

will be upheld *if it is reasonably related to the achievement of a legitimate state purpose.*" *Robinson,* 186 W.Va. at 726, 414 S.E.2d at 883 (emphasis added). In the case *sub judice,* such a review is indeed appropriate as the classification sought to be protected involves the economic rights of individuals who attend the Principals Academy.

" 'Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution, which is our equal protection clause.' Syllabus Point 7, [as modified,] *Atchinson v. Erwin,* 172 W.Va. 8, 302 S.E.2d 78 (1983)." Syllabus Point 4, as modified, *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.,* 174 W.Va. 538, 328 S.E.2d 144 (1984).

Syl. pt. 4, *Gibson v. West Virginia Dep't of Highways,* 185 W.Va. 214, 406 S.E.2d 440 (1991). Having reviewed these canons of statutory construction which govern challenges to a legislative enactment's constitutionality, we proceed to consider the precise issue presented by the instant appeal.

The constitutional controversy presented for our resolution is whether W. Va.Code § 18A–3–2c(i) impermissibly invades the economic rights of Principal Academy attendees by not guaranteeing compensation to those attendees who are not under contract at the time of their Academy attendance. Such attendance at the Principals Academy is required of all school principals in this State in an effort to ensure the preparedness of these professional educators. *See* W. Va.Code § 18A–3–2c(a,g) (1998) (Supp.1999) (establishing attendance requirement); W. Va.Code § 18A–3–2c(a,g) (1996) (Repl.Vol.1997) (same). *See also* W. Va.Code § 18A–3A–2b(a) (1998) (Supp.1999) (defining goals of Principals Academy); W. Va.Code § 18A–3A–2b(a) (1996) (Repl.Vol.1997) (same). How-

ever, the frequency of required attendance varies, depending upon the individual principal, the particular needs of the school to which he or she has been assigned, and the availability of program funding. *See* W. Va. Code § 18A–3–2c(a,b,c) (1998) (Supp.1999); W. Va.Code § 18A–3–2c(a,b,c) (1996) (Repl. Vol.1997). Pursuant to the challenged statutory language, the payment of stipends to principals whose Academy "attendance occurs outside [their] employment term" is conditioned upon the availability of such monies from the Center's annual legislative appropriation. *See* W. Va.Code § 18A–3–2c(i).[10] By contrast, those principals who have extended contractual terms of employment are essentially compensated for their Academy attendance by their various employers.

■ The first prong of equal protection analysis of economic rights is whether the classification is rationally based on "social, economic, historic or geographic factors." Syl. pt. 4, in part, *Gibson v. West Virginia Dep't of Highways,* 185 W.Va. 214, 406 S.E.2d 440. In the present context, we find this distinction between "long-contract" employees and "short-contract" employees to be rational. We repeatedly have held that county school boards have significant discretion in making personnel decisions. " 'County boards of education have substantial discretion in matters relating to the *hiring,* assignment, transfer, and promotion of school personnel....' Syllabus Point 3, [in part,] *Dillon v. Bd. of Educ. of County of Wyoming,* 177 W.Va. 145, 351 S.E.2d 58 (1986)." Syl. pt. 3, in part, *Board of Educ. of Wood County v. Enoch,* 186 W.Va. 712, 414 S.E.2d 630 (1992). *See also Mason County Bd. of Educ. v. State Superintendent of Schs.,* 160 W.Va. 348, 351, 234 S.E.2d 321, 323 (1977) ("We recognize that considerable authority is vested in a county board of education to operate its public schools." (citation omitted)). One example of such discretion is contained in W. Va.Code § 18–5–15(a) (1994) (Repl.Vol.1999), which permits a county board of education the flexibility to contract with its employees for a period of employment in excess of the minimum employment term:

---

**10.** For further discussion of the Center's stipend obligation, see Section III.B., *infra.*

The employment term for teachers [11] shall be no less than ten months, a month to be defined as twenty employment days exclusive of Saturdays and Sundays: Provided, That *the board may contract with all or part of the personnel for a longer term.* The employment term shall be fixed within such beginning and closing dates as established by the state board: Provided, however, That the time between the beginning and closing dates does not exceed forty-three weeks.

(Footnote added) (emphasis added). Given the substantial deference afforded to personnel decisions made by a county board of education and the specific grant of authority to local school boards to enter into contractual employment terms of varying lengths, we cannot find, beyond a reasonable doubt, that the economic differentiation between "long-contract" employees and "short-contract" employees is irrational.

Next, we must determine whether the second equal protection factor has been satisfied, *i.e.*, whether the classification "bears a reasonable relationship to a proper governmental purpose." Syl. pt. 4, in part, *Gibson*, 185 W.Va. 214, 406 S.E.2d 440. In this State, a person's educational rights are constitutionally guaranteed: "[t]he legislature shall provide, by general law, for a thorough and efficient system of free schools." W. Va. Const. art. XII, § 1. To facilitate the accomplishment of this mandate, the Legislature, in developing the West Virginia school system, has established certain minimum standards for educators employed thereby. *See* W. Va.Code § 18A–2–2 (1990) (Repl.Vol.1997) (discussing requirements for employment as a teacher); W. Va.Code § 18A–2–9 (1990) (Repl.Vol.1997) (defining requisite education and skills for principals). Additionally, the Legislature, in recognition of the need to maintain its educators' qualifications, has developed a system by which to preserve and further strengthen the abilities of this State's educational employees. W. Va.Code § 18A–3A–1(a) (1998) (Supp.1999) contains one such mission statement of particular relevance to the instant controversy:

Teaching is a profession that directly correlates to the social and economic well-being of a society and its citizens. Superior teaching is essential to a well educated and productive populace. Strong academic leadership provided by principals and administrators skilled in modern management principles is also essential. The intent of this article is to recognize the value of professional involvement by experienced educators, principals and administrators in building and maintaining a superior force of professional educators and to establish avenues for applying such involvement.

The general mission of the center is to study matters relating to the quality of teaching and management in the schools of West Virginia and to promote the implementation primarily of statewide programs and practices as recommended by the state board to assure the highest quality in teaching and management.... Additionally, the center shall perform such duties as are assigned to it by law....

*See also* W. Va.Code § 18A–3A–1(a) (1997) (Repl.Vol.1997) (same). Among the Center's legal obligations are the curriculum development for and sponsorship of the Principals Academy. W. Va.Code § 18A–3A–2 (1998) (Supp.1999); W. Va.Code § 18A–3A–2 (1997) (Repl Vol.1997); W. Va.Code § 18A–3A–2b. During Academy training, principals are instructed regarding certain "minimum qualities, proficiencies and skills" required of all principals in this State. W. Va.Code § 18A–3–2c(e) (1998) (Supp.1999); W. Va.Code § 18A–3–2c(e) (1996) (Repl.Vol.1997). Thus, it appears that the statutory requirement that all principals attend the Principals Academy regardless of the length of their contractual term of employment is reasonably related to the Legislature's fulfillment of its

---

11. In Chapter 18 of the West Virginia Code, the term "teacher" includes individuals employed as principals. *See* W. Va.Code § 18–1–1(g) (1998) (Repl.Vol.1999) (defining "teacher" as "mean[ing] teacher, supervisor, *principal*, superintendent, public school librarian; registered professional nurse, licensed by the West Virginia board of examiners for registered professional nurses and employed by a county board of education, who has a baccalaureate degree; or any other person regularly employed for instructional purposes in a public school in this state" (emphasis added)). *See also* W. Va.Code § 18–1–1(g) (1996) (Supp.1996) (same).

proper, and constitutionally-dictated, governmental purpose of providing a "thorough and efficient system of free schools." *See* W. Va. Const. art. XII, § 1.

Lastly, we must decide whether W. Va. Code § 18A–3–2c(i) treats all persons equally who are within the subject classification. Syl. pt. 4, in part, *Gibson v. West Virginia Dep't of Highways,* 185 W.Va. 214, 406 S.E.2d 440. In this regard, we look to the statutory provisions defining contractual terms of employment and establishing and regulating the salaries of principals in this State. As we discussed above, county boards of education may contract with their employees for periods of employment longer than the statutory minimum employment term. W. Va.Code § 18–5–15(a). Nevertheless, the corresponding statutes which fix the salaries payable to principals and other educational employees are based not upon contractual terms of employment, but upon a yearly cycle. *See* W. Va.Code § 18A–4–2 (1998) (Supp.1999) (prescribing statewide minimum salaries for teachers "during the contract year"); W. Va.Code § 18A–4–2 (1996) (Repl. Vol.1997) (same); W. Va.Code § 18A–4–3 (1996) (Repl.Vol.1997) (providing "[s]tate minimum annual salary increments for principals and assistant principals"). *See also* W. Va.Code § 18A–4–5 (1994) (Repl.Vol.1997) (basing pay equity of educational employees on statutory salary schedules). While it is true that some principals attending the Principals Academy may not be compensated for their Academy attendance, there is no indication that, on average, all principals are not receiving commensurate annual salaries in accordance with the statutory guidelines therefor. Thus, we cannot say, beyond a reasonable doubt, that the members of the class are not treated equally.

Based upon our foregoing discussion, we therefore hold that W. Va.Code § 18A–3–2c(i) (1996) (Repl.Vol.1997) and W. Va.Code § 18A–3–2c(i) (1998) (Supp.1999), which require all principals to attend Principals Academy training despite the fact that some principals' "attendance [may] occur[ ] outside [their] employment term," is constitutional. Accordingly, we reverse the circuit court's orders holding to the contrary.

### B. Payment of Stipends Pursuant to W.Va.Code § 18–3–2c(i)

■ The Center's second assignment of error concerns the circuit court's determination that the Center, and not the individual county school boards, is the entity responsible for paying the stipends discussed in W. Va.Code § 18A–3–2c(i) and payable to those Principals Academy participants who are not under contract at the time of their Academy attendance. The difficulty attending the resolution of this issue lies in the incongruous statutory provisions and legislative rule which govern such stipends. Pursuant to the first such statute, W. Va.Code § 18A–3–2c(i) (1998) (Supp.1999), the Center is charged with the payment of stipends:

> [A]ny person whose attendance [at the Principals Academy] occurs outside his or her employment term, as defined in section fifteen [§ 18–5–15], article five, chapter eighteen of this code, may be entitled to *a stipend to be determined by and paid by the center for professional development:* Provided, That nothing in this section shall be construed to require any specific level of funding by the Legislature.

(Emphasis added). *See also* W. Va.Code § 18A–3–2c(i) (1996) (Repl.Vol.1997) (same).

The second enactment governing the Center's payment of stipends, however, clearly obviates the Center's responsibility for such payments. While the prior version of W. Va.Code § 18A–3A–1(d) (1996) (Supp.1996) [12] clearly charged the Center with the payment of stipends, subsequent amendments thereto relieved the Center of this obligation, directing only that the Center retain its responsibility for the provision of expenses for Academy participants:

> ing the principals academy: Provided, That nothing in this section shall be construed to require any specific level of funding by the Legislature.
>
> (Emphasis added).

---

12. W. Va.Code § 18A–3A–1(d) (1996) (Supp. 1996) directed:

> In accordance with section two-c, article three of this chapter, the center shall be responsible for paying reasonable and necessary expenses *and any stipends* for persons attend-

In accordance with section two-c, article three of this chapter [W. Va.Code § 18A–3–2c], the center shall be responsible for paying reasonable and necessary expenses for persons attending the principals academy: Provided, That nothing in this section shall be construed to require any specific level of funding by the Legislature.

W. Va.Code § 18A–3A–1(d) (1998) (Supp. 1999). *See also* W. Va.Code §' 18A–3A–1(d) (1997) (Repl.Vol.1997) (same).

The third and final provision regarding stipends reiterates the rhetoric that establishes such stipends announced in W. Va. Code § 18A–3–2c(i). *See* 9A W. Va.C.S.R. § 126–147–6.4 (1997). Unlike § 18A–3–2c(i), though, the legislative rule dispenses with the discretionary language attending the stipend's payment and directs that such compensation "will" be paid, subject to availability of funds from legislative appropriation: "Principals attending the Academy who are not under contract during the period in which the Academy is in session will receive a stipend provided funding is allocated by the legislature." W. Va.C.S.R. § 126–147–6.4. Although this legislative rule does not specifically define the entity responsible for paying such stipends, one may infer that the Center is the intended benefactor given the rule's various references to the Center's stated responsibility to sponsor the Principals Academy and fulfill other attendant duties. *See, e.g.,* 9A W. Va.C.S.R. § 126–147–5.3 and – 5.3.1 (1997) (charging Center with task of providing Principals Academy training); 9A W. Va.C.S.R. § 126–147–6.1.5 (1997) (allowing Center to prioritize potential Principals Academy participants when insufficient funding does not permit all candidates to attend); 9A W. Va.C.S.R. § 126–147–6.5 (1997) (recognizing Center's responsibility for maintenance of records regarding Principals Academy attendees). *See also* Syl. pt. 4, *Smith v. State Workmen's Compensation Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975) (" 'That which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms.' *Syllabus* point

14., *State v. Harden,* 62 W.Va. 313, 58 S.E. 715 (1907).").

■ Despite these inconsistencies in the Legislature's pronouncements as to the party responsible for paying stipends to Principals Academy participants, this matter nevertheless may be facilely resolved through the application of basic principles of statutory construction. Generally, " '[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' Syllabus Point 3, *Smith v. State Workmen's Compensation Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. pt. 3, *Boley v. Miller,* 187 W.Va. 242, 418 S.E.2d 352 (1992). *See also* Syl. pt. 2, *Beckley v. Kirk,* 193 W.Va. 258, 455 S.E.2d 817 (1995) (same).

■ Moreover, " '[w]here it is possible to do so, it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws, and to adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions....' " *State v. Williams,* 196 W.Va. 639, 641, 474 S.E.2d 569, 571 (1996) (quoting *State ex rel. Pinson v. Varney,* 142 W.Va. 105, 109–10, 96 S.E.2d 72, 75 (1956)) (additional internal quotations and citations omitted). With respect to inconsistent statutes which, together, form a part of a comprehensive body of law, " ' "[t]he general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syllabus Point 1, *UMWA by Trumka v. Kingdon,* 174 W.Va. 330, 325 S.E.2d 120 (1984).' Syllabus point 1, *Whitlow v. Board of Education of Kanawha County,* 190 W.Va. 223, 438 S.E.2d 15 (1993)." Syl. pt. 6, *Albright v. White,* 202 W.Va. 292, 503 S.E.2d 860.

Of the various legislative enactments applicable to the instant controversy, it is clear that W. Va.Code § 18A–3–2c(i) and W. Va. C.S.R. § 126–147–6.4 are the more specific provisions as their scope is limited to the Principals Academy and the Center's specific duties in that regard. Contrariwise, W. Va. Code § 18A–3A–1 defines, in general terms, the entire scope of the Center, from its ele-

mentary purpose and component members to its various responsibilities and certain approved budgetary expenditures. *See* W. Va. Code § 18A–3A–1 (1998); W. Va.Code § 18A–3A–1 (1997). As the task at hand involves a determination of whether stipends are available to principals attending the Principals Academy, and not other forms of training sponsored by the Center, we conclude that the more specific terminology contained in W. Va.Code § 18A–3–2c(i) and W. Va. C.S.R. § 126–147–6.4 governs this controversy.

■■■ To ascertain the specific import of this provision, we need look no further than the provisions' plain language.

"When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syllabus point 5, *State of West Virginia v. General Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 107 S.E.2d 353 (1959).

Syl. pt. 1, *VanKirk v. Young,* 180 W.Va. 18, 375 S.E.2d 196 (1988). *See also* Syl. pt. 4, *Daily Gazette Co., Inc. v. West Virginia Dev. Office,* 206 W.Va. 51, 521 S.E.2d 543 (1999) (same). In this vein, W. Va.Code § 18A–3–2c(i) clearly dictates that stipends are to be "paid by the center for professional development," and W. Va.C.S.R. § 126–147–6.4 indicates that such payments are conditioned upon the Legislature's allocation of funding therefor.

■■■ The sole remaining inconsistency between these provisions is whether the payment of such stipends rests within the Center's discretion, as suggested by the employment of the permissive term "may" in § 18A–3–2c(i), or whether such payments are mandatory, as implied by the directory word "will" contained in § 126–147–6.4. *Compare State v. Hedrick,* 204 W.Va. 547, 552, 514 S.E.2d 397, 402 (1999) ("The word 'may' generally signifies permission and connotes discretion." (citations omitted)) *and Gebr. Eickhoff Maschinenfabrik Und Eisengieberei mbH v. Starcher,* 174 W.Va. 618, 626 n. 12, 328 S.E.2d 492, 500 n. 12 (1985) (same) *with Airline Motor Coaches, Inc. v. Guidry,*

241 S.W.2d 203, 209 (Tex.Civ.App.1950) ("The word 'will' has been defined as an auxiliary verb commonly having the mandatory sense of shall or must." (citation omitted)) *and Russell v. Harrison,* 33 Okla. 225, 229, 124 P. 762, 763 (1912) (same). *But see In re Trusteeship of First Minneapolis Trust Co.,* 202 Minn. 187, 191–92, 277 N.W. 899, 902 (1938) ("Provisions which are mandatory in form are often held to be directory and those which are directory in form are often held to be mandatory because such words as 'may,' 'shall,' 'must,' and 'will' are often used without discrimination. All of them are elastic and frequently treated as interchangeable." (citations omitted)). Typically, " '[s]chool personnel regulations and laws are to be strictly construed in favor of the employee.' Syl. pt. 1, *Morgan v. Pizzino,* 163 W.Va. 454, 256 S.E.2d 592 (1979)." Syl. pt. 4, *Miller v. Board of Educ. of Boone County,* 190 W.Va. 153, 437 S.E.2d 591 (1993). In keeping with this liberal construction, then, we conclude that the directory provision contained in W. Va. C.S.R. § 126–147–6.4 governs the Center's obligation to pay stipends to Principals Academy participants who are not under contract at the time of the training session.

Accordingly, we hold that W. Va.Code § 18A–3–2c(i) (1996) (Repl.Vol.1997), W. Va. Code § 18A–3–2c(i) (1998) (Supp.1999), and 9A W. Va.C.S.R. § 126–147–6.4 (1997) require the Center for Professional Development to pay stipends to individuals attending the Principals Academy "whose attendance occurs outside [their] employment term" "provided funding is allocated by the legislature." To the extent that the circuit court likewise determined the Center to be the party responsible for paying stipends to Principals Academy participants, we affirm the lower court's rulings.

■■■ A further issue of contention herein is the precise amount of the stipends to be paid to the participating principals eligible to receive the same. This figure is not defined in the provisions establishing the stipend, *see* W. Va.Code § 18A–3–2c(i) (1998); W. Va. Code § 18A–3–2c(i) (1996); W. Va.C.S.R. § 126–147–6.4, but the determination of this

amount is entrusted to the Center: "a stipend to be determined by ... the center for professional development." W. Va.Code § 18A–3–2c(i) (1998); W. Va.Code § 18A–3–2c(i) (1996).[13] Therefore, to the extent that the circuit court held that such stipends should be commensurate with the attendees' contractual daily rate of pay, we reverse the lower court's order.

## IV.

### CONCLUSION

For the foregoing reasons, we affirm, in part, and reverse, in part, the orders of the Circuit Court of Kanawha County entered January 15, 1999, and April 1, 1999. We affirm the lower court's rulings insofar as they conclude that the Center, and not the individual county boards of education, is the entity responsible for paying a stipend to Principals Academy participants whose attendance at such training occurs outside of their contract period of employment. How-

ever, we reverse the circuit court's decision that W. Va.Code § 18A–3–2c(i) is unconstitutional as applied, and find that this statute does not violate constitutional guarantees of equal protection. We further reverse the lower court's determination that stipends should be paid in an amount equal to the attendees' daily contractual rate of pay. Accordingly, we affirm, in part, and reverse, in part, the circuit court's orders.

Affirmed, in part, and Reversed, in part.

Judge ROBERT B. STONE, sitting by temporary assignment.

Justice SCOTT did not participate.

---

**13.** Although the definition of the stipends' value rests within the Center's discretion, we note that W. Va.Code § 18A–4–3 (1996) (Repl.Vol.1997) may provide some guidance in this regard: "[s]alaries for employment [as a principal or an assistant principal] beyond the minimum employment term shall be at the same daily rate as the salaries for the minimum employment terms."