679 S.E.2d 622

**Jamey LITTLE, Plaintiff,**

**v.**

**WEST VIRGINIA ADJUTANT GENERAL, Defendant**

**No. 34270.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 25, 2009.

Decided May 19, 2009.

Gary E. Pullin, Esq., Traci L. Wiley, Esq., Pullin, Fowler, Flanagan, Brown & Poe, PLLC, Charleston, WV, for Defendant.

Lonnie C. Simmons, Esq., Robert M. Bastress III, Esq., Di Trapano, Barrett & DiPiero, PLLC, Charleston, WV, for Plaintiff.

WORKMAN, Justice:

This case is before the Court upon the April 7, 2008, Order from the Circuit Court of Kanawha County, which certified a two-part question pursuant to West Virginia Code § 58–5–2 (2005).[1] In certifying the question, the circuit court denied the Defendant's,[2] the West Virginia Adjutant General's (hereinafter referred to as "Adjutant General") Motion for Summary Judgment. The question certified to this Court is as follows:

> In this case, Plaintiff was a firefighter employed by the Adjutant General and was a member of the National Guard when he was first hired. The National Guard later discharged Plaintiff based upon a mental disability. The Adjutant General then discharged Plaintiff as a firefighter, based upon W. Va.Code § 15–1B–26 [(2004)], because he was no longer a member of the National Guard. Under these facts, is the Adjutant General's reliance on W. Va.Code § 15–1B–26 a complete defense to Plaintiff's claim that he was discriminated against by the Adjutant General in violation of the West Virginia Human Rights Act [(hereinafter also referred to as "the Act"), West Virginia Code §§ 5–11–1 to – 21 (2008)], unless the Plaintiff falls within the exception to the requirement of military membership in the "grandfather clause" contained in the statute?

The circuit court answered the question of whether the Adjutant General's reliance

---

**1.** West Virginia Code § 58–5–2 (2005) provides, in relevant part:

> Any question of law, including, but not limited to, questions arising ... upon the sufficiency of a motion for summary judgment where such motion is denied ... may, in the discretion of the circuit court in which it arises, be certified by it to the Supreme Court of Appeals for its decision, and further proceedings in the case stayed until such question shall have been decided and the decision thereof certified back. The procedure for processing questions certified pursuant to this section shall be governed by rules of appellate procedure promulgated by the Supreme Court of Appeals.
> *Id.*

**2.** In the briefing before this Court, the Adjutant General refers to himself as the Appellant and the Plaintiff, Jamey Little, refers to himself as the Appellee. This case, however, is not before the Court upon an appeal. Consequently, the parties remain simply the Plaintiff and the Defendant. W. Va. R.App. P. 13 (referring to "the party presenting the certified question").

upon West Virginia Code § 15–1B–26 would be a complete defense to the Plaintiff's claim that he was discriminated against by the Adjutant General in violation of the West Virginia Human Rights Act in the affirmative. The circuit court, however, further found that any firefighter who was a member of the National Guard on the date West Virginia Code § 15–1B–26 was enacted is protected by the grandfather clause contained in the statute. Upon review of the parties' briefs and arguments, the record, and all other matters before the Court, we answer the certified question in the affirmative and further determine that the circuit court erroneously interpreted the grandfather clause provision contained within West Virginia Code § 15–1B–26 to include the Plaintiff.

## I. Factual and Procedural History

The following facts of this case are stipulated to by the parties and, therefore, are undisputed:

In 1989, the civilian firefighter positions at Yeager Airport, in Charleston, West Virginia, were dissolved, and the positions were reopened as state employment positions under the control and supervision of the Adjutant General.[3] On July 20, 1989, the Adjutant General established a job description[4] for the firefighters at the 130th Airlift Wing at Yeager Airport, which included a requirement that a candidate be a member of the West Virginia Air National Guard.[5]

In October of 1996, after serving approximately four and one-half years in the active duty with the United States Air Force as a firefighter, the Plaintiff applied for a firefighter position with the Adjutant General's office. At the time the Plaintiff applied for the position, he was a member of the National Guard.

On June 2, 2004, West Virginia Code § 15–1B–26, which was passed by the West Virginia Legislature during the 2004 Regular Session, became effective. That statute provides:

Only firefighters and security guards who are members of the West Virginia national guard may be employed by the adjutant general as firefighters and security guards: Provided, That any person employed as a firefighter on the effective date of this section who is not a member of the West Virginia air national guard may continue to be employed as a firefighter: Provided, however, That no person who is not employed on the effective date of this section as a firefighter and who is not a member of the West Virginia air national guard may be employed as a firefighter for the West Virginia air national guard.

*Id.*

In 2002, the Plaintiff began receiving periodic counseling and prescribed medications to address anxiety and depression. The Plaintiff testified that he did not always take his medication; however, he continued to see his treating physician, Dr. Scott Moore, until some time in 2004.[6]

On July 20, 2004, the Plaintiff attempted to commit suicide by consuming an overdose of prescription medication in a hotel room in front of fellow firefighters and members of

---

**3.** Pursuant to West Virginia Code § 15–1A–1 (2004), the Adjutant General's department is part of the executive branch of State government and is "charged with the organization, administration, operation and training, supply and discipline of the military forces of the State." *Id.* As part of the Adjutant General's duties, firefighters and security guards are hired not only to serve the 130th Airlift Wing of the West Virginia National Guard, but also to deal with various emergencies at Yeager Airport and elsewhere.

**4.** The job description provided:

TITLE: FIREFIGHTER
  VI.  QUALIFICATIONS
    a.  MANDATORY:
      * * *

5) Qualified Personnel are hired in accordance with department needs, State and Federal policy, and Affirmative Action Plan.
  * * *
12) Be a member or eligible and willing to be a member of the WVANG with assignment to the Fire Protection Branch.

**5.** The Operations and Maintenance Agreement Position Vacancy Announcement in effect at that time for the position of firefighter provided:

MILITARY MEMBERSHIP: Position will be filled by a member of the West Virginia Air National Guard, unless the Adjutant General grants a waiver for special qualifications or other reasons justified by the selecting supervisor.

**6.** The Plaintiff never told his doctor that he did not always take his medication as prescribed.

the National Guard. The Plaintiff required hospitalization.

As a result of the Plaintiff's attempted suicide,[7] the National Guard placed the Plaintiff on 4T profile, which restricts an individual from being militarily deployable based upon a medical condition. Based upon the Plaintiff's 4T profile, the Adjutant General placed the Plaintiff on a medical suspension from working as a firefighter, due to the requirement that firefighters be members of the military.

The Plaintiff grieved the Adjutant General's decision to medically suspend him and won his grievance by default. The parties subsequently entered into a settlement agreement reinstating the sick and vacation leave used up by the Plaintiff. The Plaintiff also received $1,486.56 to cover the pay he lost between January 24, 2005, and May 24, 2005.

The Plaintiff's medical file was evaluated by an Air Force Medical Evaluation Board and, in January of 2005, the Air Force disqualified the Plaintiff for world-wide duty based upon a diagnosis of "[300.00] Anxiety disorder with PTSD symptoms, and [E950] suicide and self-inflicted poisoning by solid or liquid substances." The Plaintiff was subsequently discharged from the West Virginia Air National Guard.

Based upon the Plaintiff's military discharge, and pursuant to West Virginia Code § 15–1B–26, the Adjutant General transferred the Plaintiff, effective June 16, 2005, to the position of building maintenance specialist, a position with the Civil Engineering branch of the Adjutant General's office that does not require military membership for employment.

Based upon the testimony of the Plaintiff's current treating physician, Dr. Lawrence Kelly, due to the Plaintiff's post-traumatic stress disorder, the Plaintiff would have been unable to continue employment as a firefighter at least as of August 23, 2005, and would have been unable to continue in any type of gainful employment as of September 27, 2006. Dr. Kelly testified that, following the Plaintiff's office visit with him on September 27, 2006, he advised the Plaintiff to resign his position with the Adjutant General's office. The Plaintiff resigned his employment with the Adjutant General's office on October 17, 2006.

The Adjutant General moved for summary judgment arguing that: 1) the Adjutant General had a legitimate, nondiscriminatory reason for the Plaintiff's dismissal pursuant to West Virginia Code § 15–1B–26 and, therefore, his action was not in violation of the Act; and 2) the grandfather clause contained in West Virginia Code § 15–1B–26 does not provide an exception to military membership which would benefit the Plaintiff in this case.[8] The Adjutant General's summary judgment motion was denied by the Circuit Court and a question was certified to this Court.

## II. Standard of Review

This Court reviews a circuit court's answer to a certified question de novo. Syl. Pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996). Likewise, a de novo standard of review governs the interpretation of any statutory provision as it involves a purely legal question. Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

## III. Discussion of Law

**A. Is the Adjutant General's reliance on West Virginia Code § 15–1B–26 a complete defense to the Plaintiff's claim that he was discriminated against by the Adjutant General in violation of the West Virginia Human Rights Act?**

The first issue that we must address is whether the provisions of West Vir-

---

7. Various psychiatrists and psychologists who have provided counseling and treatment to the Plaintiff have determined that he suffers from post-traumatic stress syndrome and depression.

8. Before the circuit court, the Plaintiff maintained that he lost his job as a firefighter because he was diagnosed as suffering from post-traumatic stress disorder. The Plaintiff contended that although the reason for his discharge as a firefighter was stated to be the loss of his membership in the West Virginia Air National Guard, he was actually discriminated against because of his disability. The Plaintiff asserted that the Adjutant General's reliance upon West Virginia Code § 15–1B–26 was a pretext for disability discrimination and argued that the statute does not exempt the Adjutant General from being held liable for violations of the Act.

ginia Code § 15–1B–26 provide a defense to the Plaintiff's discrimination claim under the Act. West Virginia Code § 15–1B–26 expressly provides that "**[o]nly firefighters and security guards who are members of the West Virginia national guard may be employed by the adjutant general as firefighters** and security guards[.]" *Id.* (emphasis added). This Court has repeatedly held that "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968).

While the record before the Court is devoid of any argument that the foregoing statutory provision was ambiguous, thereby necessitating an interpretation of the statute, the Plaintiff goes to great lengths in his argument that this statutory provision denies firefighters and security guards the most fundamental rights against discrimination afforded to all other State employees under the Act. W. Va.Code §§ 5–11–1 to –21. Despite the Plaintiff's argument, the Court's review of the subject statute readily leads to the conclusion that under no circumstance does this statutory provision excuse compliance with the provisions of the Act. Rather, the elements and burden of production regarding proof of a claim under the Act remain unchanged. *See* Syl. Pt. 6, *Skaggs v. Elk Run Coal Co.*, 198 W.Va. 51, 479 S.E.2d 561 (1996) (holding that "[i]n disparate treatment discrimination cases under the West Virginia Human Rights Act, W. Va.Code, 5–11–9 (1992), a plaintiff proves a claim for unlawful discrimination if he or she proves by a preponderance of the evidence that a forbidden intent was a motivating factor in an adverse employment action. Liability will then be imposed on a defendant unless it proves by a preponderance of the evidence that the same result would have occurred even in the absence of the unlawful motive.").

■ Given the lack of any argument below regarding the language of the statute being ambiguous, this Court must give the statute its plain meaning without interpreting it. Thus, we hold that West Virginia Code § 15–1B–26 (2004) requires that any individual employed by the West Virginia Adjutant General as a firefighter after June 2, 2004, the effective date of the statute, must also be a member of the West Virginia National Guard. Consequently, if an individual ceases to be a member of the West Virginia National Guard, then the individual can no longer be employed as a firefighter under the provisions of West Virginia Code § 15–1B–26.

In the instant matter, therefore, under the provisions of West Virginia Code § 15–1B–26, the Adjutant General had no other choice but to remove the Plaintiff from his firefighter position once the West Virginia Air National Guard discharged the Plaintiff from duty. The Plaintiff was not discharged by the Adjutant General; rather, the Plaintiff was discharged from the West Virginia Air National Guard, because of an evaluation by the Air Force Medical Board. The Adjutant General, because of the provisions of West Virginia Code § 15–1B–26, transferred the Plaintiff to a position of building maintenance special, which was a position that did not require military membership for employment. Succinctly stated, the Plaintiff failed to carry his burden of proof by offering evidence of any forbidden intent on the part of the Adjutant General as being a motivating factor in the Plaintiff being transferred to the position of building maintenance specialist with the Civil Engineering branch of the Adjutant General's Office. *Skaggs*, 198 W.Va. at 59, 479 S.E.2d at 569, Syl. Pt. 6.

**B. Does the Plaintiff fall within the purview of the grandfather clause provision of West Virginia Code § 15–1B–26?**

■ West Virginia Code § 15–1B–26 provides, in relevant part:

> **Provided, That any person employed as a firefighter on the effective date of this section who is not a member of the West Virginia air national guard may continue to be employed as a firefighter:** Provided, however, That no person who is not employed on the effective date of this section as a firefighter and who is not a member of the West Virginia air national

guard may be employed as a firefighter for the West Virginia air national guard.

*Id.* (emphasis added).

The term grandfather clause is defined as

[a] provision that creates an exemption from the law's effect for something that existed before the law's effective date; specif., a statutory or regulatory clause that exempts a class of persons or transactions because of circumstances existing before the new rule or regulation takes effect.

*Black's Law Dictionary* 718 (8th ed. 1999). Utilizing this common definition explaining the purpose of enacting a grandfather clause, leads to one conclusion, which is that the Legislature created an exemption from the requirement of membership in the West Virginia Air national Guard for those individuals who had been hired as firefighters prior to 2004 when the Legislature passed the statute, but who were not members of the West Virginia Air National Guard prior to the effective date of the statute. W. Va.Code § 15–1B–26. Consequently, those individuals who were not members of the West Virginia Air National Guard could keep their jobs as firefighters, because they were firefighters before the statutory mandate was passed that the individuals had to be members of the West Virginia Air National Guard.

While the circuit court found, based upon the Plaintiff's argument, that the Plaintiff was protected by the grandfather clause, such a reading of the grandfather clause would render the statutory provision meaningless. Again, there was no argument made by the Plaintiff that this provision was, in any way, ambiguous. Therefore, this Court must give the provision its plain meaning, without resorting to any interpretation. *Carvey v. West Virginia State Bd. of Educ.,* 206 W.Va. 720, 732, 527 S.E.2d 831, 843 (1999).

Further, the circuit court reasoned that

[t]he assertion that a firefighter, who was a member of the National Guard at the time this statute was enacted, but who later is dismissed from the National Guard, somehow loses the benefit of this grandfather clause requires too narrow a reading of W. Va.Code § 15–1B–26. Such an interpretation would permit Defendant to keep firefighters, who have never been members of the National Guard, while firefighters, who actually were members of the National Guard for many years could be discharged, leaving those originally in the National Guard with less rights than others. The only logical reading of this grandfather clause is that it protects all persons who were firefighters in 2004, when the statute was enacted. Otherwise, Equal Protection under the Due Process Clause of the Fourteenth Amendment is violated.[9]

**9.** The Plaintiff pleaded in Count III, entitled "Declaratory Judgment," paragraph 41, that he sought to have the circuit court determine "whether W. Va.Code § 15–1B–26, violates due process and equal protection principles under the West Virginia Constitution." Thereafter, when the Adjutant General moved for summary judgment, the argument was made that the statutory provision did not violate either due process or equal protection principles under the West Virginia Constitution. In opposing the Adjutant General's summary judgment motion, the Plaintiff did not argue any violation of due process; instead, the Plaintiff argued that the statute violated the Equal Protection Clause of the West Virginia Constitution.

As the Plaintiff correctly pointed out before the court below,

" ' "[w]here economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons with-

in the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution, which is our equal protection clause." Syllabus Point 7, [as modified,] *Atchinson v. Erwin,*. 172 W.Va. 8, 302 S.E.2d 78 (1983).' Syllabus Point 4, as modified, *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.,* 174 W.Va. 538, 328 S.E.2d 144 (1984)." Syllabus point 4, *Gibson v. West Virginia Department of Highways,* 185 W.Va. 214, 406 S.E.2d 440 (1991).

*Carvey,* 206 W.Va. at 723, 527 S.E.2d at 834, Syl. Pt. 4.

In the instant case, the classification of requiring firefighters to be members of the West Virginia Air National Guard is undoubtedly a rational one based on economic factors directly tied to the undisputed evidence of a reasonable relationship to a proper governmental purpose as the statute was enacted as a means of keeping the federal funding associated with having the 130th Airlift Wing located at Yeager Airport.

Despite this perceived equitable interpretation given to the grandfather clause by the circuit court, the provision was not subject to the lower court's interpretation, because it was not ambiguous. *See Carvey,* 206 W.Va. at 732, 527 S.E.2d at 843. Thus, the lower court's interpretation of the statutory provision is erroneous. The grandfather clause contained within West Virginia Code § 15–1B–26 (2004) only exempts from membership in the West Virginia Air National Guard those persons who were employed as firefighters on the effective date of the statute, June 2, 2004, but who were not members of the West Virginia Air National Guard at that time.

Undisputedly, the Plaintiff was a member of the West Virginia Air National Guard and employed as a firefighter by the Adjutant General at the time of the effective date of the relevant statute. Accordingly, the Plaintiff simply does not fall within the grandfather clause provision of West Virginia Code § 15–1B–26.

### IV. Conclusion

For the foregoing reasons, we answer the certified question as follows:

Under the facts of this case, the Adjutant General's reliance on West Virginia Code § 15–1B–26 is a complete defense to the Plaintiff's claim that he was discriminated against by the Adjutant General in violation of the West Virginia Human Rights Act and the Plaintiff does not fall within the exception to the requirement of military membership in the grandfather clause contained within the provisions of West Virginia Code § 15–1B–26.

Certified question answered.

Moreover, there was no evidence to suggest that all the individuals in the class were not treated equally. *Id.* Consequently, the lower court incorrectly determined that the Equal Protection Clause of the West Virginia Constitution would be violated unless all persons who were firefighters in 2004 fell within the purview of the grandfather clause contained with the statute. Moreover, the Plaintiff failed to raise any Equal Protection argument on appeal.