716 S.E.2d 689

STATE of West Virginia ex rel. WEST VIRGINIA PARKWAYS AUTHORITY, Erica M. Mani, in her official capacity as Chairman Designee of the West Virginia Parkways Authority, and Cameron Lewis, in his official capacity as Vice Chairman of the West Virginia Parkways Authority, Petitioners

v.

Gregory C. BARR, in his official capacity as General Manager of the West Virginia Parkways Authority, County Commission of Mason County, West Virginia; Miles S. Epling, in his official capacity as President of the Mason County Commission; Robert C. Baird, in his official capacity as Commissioner of the Mason County Commission; and Rick L. Handley, in his official capacity as Commissioner of the Mason County Commission, Respondents.

No. 35757.

Supreme Court of Appeals of West Virginia.

Submitted Dec. 7, 2010.

Decided March 1, 2011.

James S. Crockett, Jr., Esq., Roger D. Hunter, Esq., Timothy D. Houston, Esq., Spilman, Thomas & Battle, PLLC, Charleston, WV, for Petitioners.

Herschel H. Rose, Esq., Steven R. Broadwater, Esq., Rose Law Office, Charleston, WV, for Respondent Gregory C. Barr.

Damon B. Morgan, Jr., Esq., Prosecuting Attorney for Mason County, Point Pleasant, WV, for Respondents County Commission of Mason County, West Virginia; Miles S. Epling; Robert C. Baird; and Rick L. Handley.

Vincent Trivelli, Esq., The Law Office of Vincent Trivelli, PLLC, Morgantown, WV, for Amicus Curiae the West Virginia State Building and Construction Trades Council, AFL–CIO.

C. Eugene Zopp, Ph.D., Mason County Resident, Gallipolis Ferry, WV, Pro se Amicus Curiae.

WORKMAN, Chief Justice:

In this original jurisdiction action, the petitioners, the West Virginia Parkways Authority, Erica M. Mani, in her official capacity as Chairman Designee of the West Virginia Parkways Authority, and Cameron Lewis, in his official capacity as Vice Chairman of the West Virginia Parkways Authority (jointly "Petitioners"), sought a writ of mandamus against the respondents, the County Commission of Mason County, West Virginia, Miles S. Epling, in his official capacity as President of the County Commission of Ma-

son County, and Robert C. Baird and Rick L. Handley, in their official capacities as Commissioners of the County Commission of Mason County (jointly "the Commission Respondents"), and Gregory C. Barr, in his Official Capacity as General Manager of the West Virginia Parkways Authority ("Respondent Barr"). Specifically, on November 18, 2010, the Petitioners filed a petition seeking to compel Respondent Barr to proceed with his statutory duties as General Manager of the Parkways Authority with regard to the "U.S. Route 35 parkway project." Respondent Barr had refused to carry out his non-discretionary duties with regard to this project after the Commission Respondents voted to rescind their approval of the project.

On November 22, 2010, this Court issued a rule to show cause. Separate responses were received from the Commission Respondents and Respondent Barr.[1] On December 7, 2010, the Court entered an order finding that the Commission Respondents had no legal authority to rescind their approval of the U.S. Route 35 parkway project. Accordingly, the Court granted the requested writ of mandamus and compelled Respondent Barr to proceed with his statutory duties with regard to that project. Because the Petitioners had established a need for a timely resolution of the issue, the Court issued a mandate in conjunction with its December 7, 2010, order, while indicating that an opinion would follow in due course.

This opinion, therefore, sets forth the Court's basis for issuing the December 7, 2010, order and mandate.

## I. FACTS

In 2010, the West Virginia Legislature enacted Senate Bill 427 ("SB 427"), which amended West Virginia Code §§ 17–16A–1 to –30 (2009 & Supp.2010) to enable the West Virginia Parkways Authority ("Parkways Authority") to work with the West Virginia Department of Transportation, Division of Highways ("DOH") in implementing new toll roads in the State. Pursuant to SB 427, the Parkways Authority is authorized to "construct, reconstruct, improve, maintain, repair and operate projects, at such locations within the state as may be determined by the Parkways Authority subject to the provisions of section thirty [§ 17–16A–30] of this article...." *Id.* at § 17–16A–6(a)(5). Section thirty of Article 16A provides that, after the Parkways Authority has identified a new parkway project, the Governor must appoint two persons from each county where the parkway project is located to sit on a local advisory committee ("LAC"). *Id.* at § 17–16A–30. The LAC is tasked with studying the proposed project and submitting its written findings to the county commissions of the affected counties. *Id.* Those county commissions must then, by resolution, approve the proposed parkway project. *Id.* Specifically, the statute provides that "[p]rior to any final approval of a parkway project, the county commissions of the counties in which a parkway project is located shall by resolution approve the parkway project." *Id.*

To fund such projects, the Parkways Authority is authorized "[t]o issue parkway revenue bonds ... payable solely from revenues, for the purpose of paying all or any part of the cost of any one or more parkway projects...." *Id.* at § 17–16A–6(a)(6). Furthermore, the Parkways Authority may "fix and revise, from time to time, tolls for transit over each parkway project constructed or improved by it...." *Id.* at § 17–16A–6(a)(8). The toll revenue is used to fund both "[t]he cost of maintaining, repairing and operating" the project as well as repaying the principal and interest on any parkways bonds issued to fund the project. *Id.* at § 17–16A–13(a)(1). "Such tolls ... shall not be subject to supervision or regulation by any other commission, board, bureau, department or agency of the State." *Id.*

Before the Parkways Authority may "[f]ix initial rates, tolls or charges along any portion of a parkway project" or approve any contracts that would require such tolls, the Authority must provide public notice and

---

1. This Court also acknowledges the contributions of the two amici curiae in this case: the West Virginia State Building and Construction Trade Council, AFL–CIO, which filed a brief in support of the Petitioners, and C. Eugene Zopp, Ph.D., a Mason County resident who filed a brief in support of the Commission Respondents.

hearing. *Id.* at § 17–16A–13a(a)(1). The notice, which must be published and circulated in all counties bordering the proposed parkway project, must disclose "any proposed contract, project or bond" as well as "the associated initial rate" of the toll. *Id.* at § 17–16A–13a(b). The Parkways Authority shall then conduct a public hearing in each affected county, not less than forty-five days from the publication of the notice. *Id.* at § 17–16A–13a(c).

At the conclusion of all required public hearings, the Parkways Authority shall render a final decision which shall include written findings of fact supporting its final decision on any proposed project which would result in or require initial rates, a rate increase, or prior to finally approving any proposed initial rate or toll or rate or toll increase, and such required findings and conclusions must reference and give due consideration to the public comments and additional evidence offered during the public hearings.

*Id.* at § 17–16A–13a(e).

Turning to the instant case, on July 8, 2010, the Parkways Authority adopted a resolution identifying and designating a new parkway project in Mason and Putnam counties. The goal of the project is to complete 14.6 miles of what is commonly referred to as the "new U.S. Route 35" to create a "modern four-lane highway" between Mason and Putnam counties. New U.S. Route 35 extends from the Ohio–West Virginia border in Mason County to Interstate 64 in Putnam County, and is intended to replace the older, two lane road known as "old U.S. Route 35." To fund this project, the Parkways Authority proposes to toll 31.88 miles of the new U.S. Route 35. The construction of the remaining 14.6 miles of the road, as well as the toll plazas, would be paid for, in part, by issuing parkway revenue bonds. Those bonds would be repayable solely from revenues generated from the tolled portion of the road.

Following the Parkways Authority's identification of U.S. Route 35 as a new parkway project, Governor Joe Manchin, III appointed two people each from Mason and Putnam counties to serve on the LAC. On September 23, 2010, the LAC issued a report recommending that "[n]ew U.S. Route 35 should be completed as a modern four-lane highway as soon as possible," and finding that the only way to do so in a timely manner would be to make the 31.88–mile section a toll road. It further recommended that the Parkways Authority issue toll revenue bonds to help finance the construction of the final section of the road.

On September 28, 2010, following a presentation by the LAC of its findings, the County Commission of Putnam County unanimously issued a written resolution approving the proposed U.S. Route 35 parkway project. Two days later, on September 30, 2010, the LAC made a similar presentation to the County Commission of Mason County. Following the presentation, the Commission Respondents voted two-to-one to approve the U.S. Route 35 parkway project. In their resolution, the Commission Respondents found that the LAC's findings were "fair and reasonable," and indicated that they had considered the LAC's findings "along with other input and information it has received during its own review, analysis and consideration of the Proposed Parkway." They noted that completing U.S. Route 35 is needed for safety and economic reasons, and that, because it is impractical to build the road in a piecemeal fashion, constructing a toll road is necessary. They concluded by stating that "the County Commission does hereby approve the Proposed Parkway in accordance with and to satisfy the requirements of § 17–16A–30 of the West Virginia Code."

On October 7, 2010, the Parkways Authority issued its own resolution, approving and confirming the findings of the LAC, adopting the resolutions of the Putnam and Mason county commissions, and issuing "Final Approval and Designation of Parkway Project." Specifically, Section 3 of that resolution states that "[t]he Authority hereby identifies, approves and designates the Proposed Parkway as a 'parkway project' under SB 427 and the Parkway Authority Act, and approves the tolling of the road and the issuance of toll revenue bonds by the Authority subject to satisfying further requirements of SB 427 and the Parkways Authority Act. . . ."

On October 26, 2010, the DOH opened bidding for "design-build" contracts for the U.S. Route 35 parkway project. A low bid of $187.2 million was received, which was designated to remain open for 120 days. On November 2, 2010, Jacobs Engineering Group, Inc. ("Jacobs"), a private firm retained by the DOH to undertake a preliminary traffic and revenue study, issued a report entitled "West Virginia U.S. Route 35 Preliminary Toll Traffic and Gross Toll Revenue Report" (the "Jacobs Report"). Among other things, the Jacobs Report contained a proposed toll and discount schedule, setting forth proposed toll rates and discounts for the U.S. Route 35 parkway project through the year 2043. In addition, the report set forth a "preliminary plan of finance," estimating the amount of toll revenue bonds that the State will need to issue. Jacobs based its bond estimate on the estimated cost of the project which, in turn, was based on the $187.2 million design-build bid received by the DOH on October 26, 2010. Because the bonds will be repayable solely through toll revenue, the proposed schedule of toll rates was itself based on the estimated bond amount and, thus, indirectly based on the $187.2 million bid as well.

On November 4, 2010, the Parkways Authority issued a resolution accepting the Jacobs Report, approving the "Proposed Toll and Discount Schedule" prepared by Jacobs, and authorizing the construction of two toll plazas on the U.S. Route 35 parkway project. The resolution further directed Parkways Authority staff to issue public notice and schedule public hearings in Putnam and Mason counties on the proposed toll and discount schedule.

On November 10, 2010, approximately six weeks after issuing their original resolution, the Commission Respondents reconvened in a special session and voted two-to-one to rescind their prior approval of the U.S. Route 35 parkway project. Two days later, on November 12th, the Commission Respondents notified the DOH of their vote and advised the DOH to "cease and desist any effort to toll this highway." The DOH informed Respondent Barr. On November 18, 2010, Respondent Barr sent a letter to the Chairman of the Parkways Authority stating that he would not proceed with issuing public notice or conducting public hearings on the toll rate schedule, nor would he assist the Parkways Authority in issuing toll revenue bonds, until the legal uncertainties raised by the Commission Respondents had been resolved.

Given Respondent Barr's position, the Parkways Authority petitioned this Court on November 18, 2010, for a writ of mandamus requiring Respondent Barr to discharge his statutory duties of issuing public notice and conducting public hearings on the proposed schedule of toll rates. Because the pending design-build construction bid on which the proposed toll rates were based would only remain open for 120 days, the Petitioners requested expedited review of the matter. This Court agreed that expedited review was warranted, and issued a rule to show cause. After receiving responses, the Court issued its December 7, 2010 Order, ruling that the County Commission of Mason County had no legal authority to rescind its September 30, 2010, approval of the U.S. Route 35 parkway project and directing Respondent Barr to fulfill his statutory duties.

## II.  STANDARD OF REVIEW

██ "Mandamus is a proper remedy to require the performance of a nondiscretionary duty by various governmental agencies or bodies." Syl. Pt. 1, *State ex rel. Allstate Ins. Co. v. Union Pub. Serv. Dist.*, 151 W.Va. 207, 151 S.E.2d 102 (1966). "This Court's original jurisdiction in mandamus proceedings derives from Art. VIII, § 3, of The Constitution of West Virginia. Its jurisdiction is also recognized in Rule 14 of the West Virginia Rules of Appellate Procedure and *W. Va.Code* § 53–1–2 (1933)." *State ex rel. Potter v. Office of Disciplinary Counsel*, 226 W.Va. 1, 4, 697 S.E.2d 37, 40 (2010).

Before this Court may properly issue a writ of mandamus three elements must coexist:  (1) the existence of a clear right in the petitioner to the relief sought;  (2) the existence of a legal duty on the part of the respondent to do the thing the petitioner seeks to compel;  and (3) the absence of another adequate remedy at law.

Syl. Pt. 3, *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981). "While it is true that mandamus is not available where another specific and adequate remedy exists, if such other remedy is not equally as beneficial, convenient, and effective, mandamus will lie." *Id.* at Syl. Pt. 4, 298 S.E.2d 781.

In the instant case, the only question to be resolved is whether the Petitioners have a clear right to the relief they seek. *See id.* at Syl. Pt. 3, 298 S.E.2d 781. If, as the Petitioners contend, the Commission Respondents had no authority to rescind their approval of the U.S. Route 35 parkway project, then Respondent Barr has a clear legal duty pursuant to statute to issue public notice and conduct public hearings on the proposed toll rate schedule. *See id.* Moreover, given the short time frame during which the design-build bid will remain open, no other legal remedy is adequate, as none could be "as beneficial, convenient or effective." *Id.* at Syl. Pt. 4, 298 S.E.2d 781. Accordingly, mandamus is proper in this case if the Commission Respondents lacked authority to rescind their approval of the parkway project.

### III. DISCUSSION

The Petitioners contend that the Commission Respondents could not rescind their approval of the U.S. Route 35 parkway project because the Parkways Authority had relied on their original resolution to identify, approve and designate the proposed parkway as a "parkway project," thereby giving "final approval" to the project. Because West Virginia Code § 17–16A–30 provides that county commissions must give approval "prior to any final approval," the Petitioners argue that the Commission Respondents acted too late in their attempt to rescind their approval.

The Commission Respondents, on the other hand, contend that the Parkways Authority did not, and could not, have issued any "final approval" of the parkway project, because West Virginia Code § 17–16A–13a requires public notice and public hearings prior to any final action to approve a parkway project. Specifically, they point to West Virginia Code § 17–16A–13a(f), which provides that:

On and after July 1, 2010, *any final action* taken by the Parkways Authority *to approve or implement any* proposed initial rate, rate increase, contract or *project which would require or result in a proposed initial rate or toll* or a proposed increase of any rate or tolls along any portion of the parkway project *without first satisfying the public notice and hearing requirements of this section, shall be null and void.*

(Emphasis added). Because no public notice or hearing was held prior to the Parkways Authority's purported "final approval" of the U.S. Route 35 parkway project, the Commission Respondents contend that such purported "final approval" is, itself, invalid. Without valid final approval having occurred, the Commission Respondents argue that they are entitled to rescind their approval of the project.

This Court finds both parties' arguments to be misplaced. Indeed, whether or not the Parkways Authority has issued a valid final approval of the U.S. Route 35 parkway project is irrelevant. Rather, this case is resolved by the fact that the Commission Respondents did, in accordance with West Virginia Code § 17–16A–30, validly approve the U.S. Route 35 parkway project, and no legal basis exists by which they can rescind that approval at a later date.

Importantly, county commissions are limited in their authority. This Court has explained that:

" ' 'The county [commission] is a corporation created by statute, and possessed only of such powers as are expressly conferred by the Constitution and legislature, together with such as are reasonably and necessarily implied in the full and proper exercise of the powers so expressly given. It can do only such things as are authorized by law, and in the mode prescribed.' Point 3, syllabus, *Barbor v. County Court of Mercer County*, 85 W.Va. 359 [101 S.E. 721 (1920) ].' Syllabus Point 1, *State ex rel. County Court v. Arthur*, 150 W.Va. 293, 145 S.E.2d 34 (1965)."

Syl. Pt. 1, *State ex rel. State Line Sparkler of WV, Ltd. v. Teach*, 187 W.Va. 271, 418 S.E.2d

585 (1992). Here, when the Court closely examines the role of county commissions in approving parkway projects, as set forth by statute, it is apparent that the Commission Respondents overstepped their authority by attempting to rescind their approval of the U.S. Route 35 parkway project.

■ This Court has long held, as a fundamental principle of statutory construction, that " '[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968)." Syl. Pt. 1, *Little v. W. Va. Adjutant Gen.*, 223 W.Va. 790, 679 S.E.2d 622 (2009). The statute at issue here, West Virginia Code § 17–16A–30, simply provides that "[p]rior to any final approval of a parkway project, the county commissions of the counties in which a parkway project is located shall by resolution approve the parkway project." The statute does not give county commissions the ability to rescind that approval or revisit their decision after having issued the required resolution. Because the language of this statute is without ambiguity, the Court will apply its plain meaning in this case.

The Commission Respondents issued a resolution on September 30, 2010, approving the U.S. Route 35 parkway project "in accordance with and to satisfy the requirements of § 17–16A–30 of the West Virginia Code." No party argues that this resolution was improperly issued,[2] nor is there any doubt that the resolution was issued "prior to any final approval of [the U.S. Route 35] parkway pro-

ject." W. Va.Code § 17–16A–30. Accordingly, because the Commission Respondents' September 30, 2010, resolution was validly issued in compliance with the requirements of West Virginia Code § 17–16A–30, the Parkways Authority was entitled to rely on that resolution in moving forward with the project.

The implementation of parkway projects would be subject to great uncertainty if West Virginia Code § 17–16A–30 is interpreted to permit county commissions to rescind, at any time in the process, validly issued resolutions approving of such projects. As described previously, each step in the process of implementing a new parkway project builds on prior steps. For example, the Parkways Authority and DOH must receive construction bids for a project before the total cost can be estimated. The total cost must be estimated, however, in order to determine the amount of revenue bonds that will need to be issued. Further, a proposed toll rate cannot be set until the total bond amount to be repaid is known. Accordingly, the Parkways Authority cannot issue public notice and conduct public hearings on the estimated toll rates, until those prior steps have been completed. It is unlikely that the Legislature intended to create a scheme in which, after having obtained valid approval from a county commission, the Parkways Authority and DOH would proceed to undertake this series of steps, only to call an abrupt halt to the whole process—at great expense to the State—because a member of a county commission has changed his or her mind.

---

2. The Commission Respondents do not allege that any procedural problems occurred during their original approval of the U.S. Route 35 parkway project which would invalidate that vote. They do, however, argue that the DOH and Parkways Authority improperly induced them into approving the parkway project through "fraudulent and misleading representations and the withholding of relevant information." Specifically, the Commission Respondents assert that the only information presented to them prior to the September 30th vote was the report of the LAC, and they further argue that the Parkways Authority and DOH failed to disclose the Jacobs Report to them. The Jacobs Report, however, was not issued until November 2, 2010, over a month after the Commission Respondents voted to approve the parkway project. Moreover, the Commission Respondents' September 30, 2010,

resolution specifically states that "[t]he County Commission has conducted its own independent review, analysis and consideration of the Proposed Parkway. This independent review has taken into consideration information and input relating to the Proposed Parkway and related matters *which have been provided from numerous sources including, but not limited to, interested citizens, representatives from county agencies and organizations, the WVDOT, the Authority and members of its LAC, and legal counsel of the WVDOT and the Authority . . . . "* (Emphasis added). Consequently, the Commission Respondents' own resolution does not support their current allegations, and this Court finds no evidence that the Parkways Authority and DOH fraudulently induced the Commission Respondents to approve the U.S. Route 35 parkway project.

This conclusion is further bolstered by the plain language of West Virginia Code § 17–16A–13(a)(1), which clearly indicates that the Parkways Authority is solely charged with fixing toll rates for parkway projects. Specifically, that statute authorizes the Parkways Authority to fix, revise, charge and collect tolls, rents, fees and other charges in relation to parkway projects and further clarifies that: "[s]uch tolls, rents, fees and other charges *shall not be subject to supervision or regulation by any other commission,* board, bureau, department or agency of the State." *Id.* (emphasis added). Thus, although the schedule of toll rates proposed by the Parkways Authority is subject to public notice and hearings, it is not subject to review or approval by a county commission. Therefore, the Commission Respondents clearly had no authority to withdraw their approval for the U.S. Route 35 parkway project in response to learning of the Parkways Authority's proposed toll rate schedule. Indeed, permitting county commissions to withdraw support for a project after learning of the proposed toll rates would allow county commissions to indirectly control the setting of toll rates; in other words, county commissions could let it be known that, unless the Parkways Authority adopts a certain acceptable rate, the commission will withdraw its support of a project. Such an outcome would directly contravene the plain language of this statute.

In conclusion, the Commission Respondents lacked legal authority to rescind their approval of the U.S. Route 35 parkway project after having issued a valid resolution approving of that project. As noted in this Court's Order of December 7, 2010, however, this Court takes no position as to the merits of the U.S. Route 35 parkway project; rather, this Court merely holds that once a county commission has issued a valid resolution approving a parkway project pursuant to West Virginia Code § 17–16A–30 (Supp. 2010), it has no authority to rescind that approval at a later date.

## IV. CONCLUSION

Having determined that the Commission Respondents lacked authority to rescind

their approval of the U.S. Route 35 parkway project, a writ of mandamus was previously entered by Order of this Court on December 7, 2010, and a mandate compelling Respondent Barr to execute his statutory duties in connection with that project was issued contemporaneously with that prior ruling.

Writ granted.

JUSTICE BENJAMIN disqualified.

JUDGE MOATS sitting by temporary assignment.