736 S.E.2d 741

STATE of West Virginia ex rel. PUBLIC SERVICE COMMISSION OF WEST VIRGINIA and The Wetzel County Solid Waste Authority, Petitioners

v.

LACKAWANNA TRANSPORT COMPANY and Solid Waste Services, Incorporated, Respondents.

No. 12–0527.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 26, 2012.

Decided Oct. 23, 2012.

Darrell V. McGraw, Jr., Esq., Attorney General, Silas B. Taylor, Esq., Senior Deputy Attorney General Charleston, WV, and Richard E. Hitt, Esq., General Counsel, West Virginia Public Service Commission, Charleston, WV, for Petitioners.

Ancil G. Ramey, Esq. Steptoe & Johnson PLLC, Huntington, WV, and Logan Hassig, Esq., Snyder & Hassig, New Martinsville, WV, for Respondents.

PER CURIAM:

This case is before this Court upon a petition for a writ of mandamus filed by the petitioners, the Public Service Commission of West Virginia and the Wetzel County Solid Waste Authority (hereinafter referred to separately as "the Commission" and "Wetzel County" or jointly as "the petitioners"). The petitioners seek to compel the respondents, Lackawanna Transport Company and Solid Waste Services, Inc., (hereinafter referred to separately as "Lackawanna" and "SWS" or jointly as "the respondents"), to comply with an order entered by the Commission on October 13, 2011, requiring them to produce certain information and financial records pertinent to an ongoing investigation concerning the Wetzel County Landfill.

Based upon the briefs and arguments of the parties, as well as the applicable statutes and legal authorities, this Court finds that a writ of mandamus is appropriate. Therefore, for the reasons set forth below, the requested writ of mandamus is hereby granted.

## I. FACTS

Lackawanna is the legal owner of the Wetzel County Landfill located near New Martinsville, West Virginia. The landfill is a utility regulated by the Commission pursuant to W. Va.Code § 24–2–1 (2006) (Repl.Vol.

2008) and W. Va.Code § 24–2–1b (2000) (Repl.Vol.2008).[1] Lackawanna is a subchapter S corporation wholly owned by its president, Pasquale Mascaro. Mr. Mascaro is also president and co-owner of SWS, a Pennsylvania company that provides solid waste collection and disposal services to customers in Pennsylvania, New York, and New Jersey, and that has extensively used the Wetzel County Landfill for that purpose through at least 2005.

In 2007, Lackawanna filed an application with the Commission to increase its base rate for disposal of normal household trash. According to the petitioners, it was discovered during that proceeding that SWS received substantial revenue from the operation of the landfill and that the revenue did not appear on Lackawanna's books and was not otherwise disclosed to Commission staff for purposes of the rate calculation. Consequently, the Commission ordered the respondents to produce certain financial records of SWS. The records were not provided, however, and the rate case was eventually dismissed.[2]

During the rate case, it was also discovered that Lackawanna had accrued an unfunded liability of over three million dollars for anticipated closure and post-closure costs associated with waste that was already deposited at the landfill. According to the Commission, it instituted a requirement in 1990 that commercial landfills establish an escrow account for the accumulation of closure and post-closure costs associated with the landfill as a condition of receiving a rate increase,[3]

---

1. W. Va.Code §§ 24–2–1 and 24–2–1b establish that the jurisdiction of the Commission extends to "solid waste facilities." *See also* W. Va.Code § 24–2–1c (1998) (Repl.Vol.2008) (requiring operators of solid waste facilities to first obtain a certificate of need from the Commission); W. Va Code § 24–2–1f (1994) (Repl.Vol.2008) (requiring the Commission to "establish, prescribe and enforce rates and fees charged by commercial solid waste facilities").

2. The recommended decision of the administrative law judge entered on September 4, 2008, stated:

   In this proceeding, it has been established that there was off-book revenue during the test year generated by the landfill that is not reflected on its books and records, but which went to SWS. It is also clear that SWS effectively controls the Wetzel County Landfill, both as a

matter or practice and under the contract SWS has with [Lackawanna]. The Commission has already determined that SWS is a proper party in this proceeding. SWS's steadfast refusal to comply with legitimate discovery requests and orders of the Commission make it impossible for the Commission to establish just and reasonable rates for [Lackawanna] at this time. Accordingly, the proceeding must be dismissed.

3. Closure and post-closure costs are substantial because federal and state regulations require (1) that a landfill be capped at the end of its useful life with impermeable material topped with earth and native vegetation; (2) that sub-surface ground water and landfill-produced methane be monitored (sampled and analyzed) for thirty years after the landfill closes; and (3) that provision be made for the the collection of "leachate,"

but Lackawanna has not yet established such an escrow account. Thus, in dismissing the rate case, the administrative law judge suggested that a general investigation be initiated by Wetzel County so that such an escrow account for the landfill could be established. Accordingly, in December 2008, Wetzel County filed a petition with the Commission seeking an investigation oriented towards determining whether the financial interactions between the respondents have resulted in inadequate funding by Lackawanna of its accrued liability for closure and post-closure costs associated with the waste already in place at the landfill and whether Lackawanna should be required to established an escrow account to fund those costs. The investigation also sought to determine the proper manner of funding such an escrow account, including whether SWS is liable for some portion of the unfunded liability. The investigation was opened on May 14, 2010. Two months later, Wetzel County filed the discovery requests at issue in this case.

According to the petitioners, the respondents have repeatedly resisted answering the discovery requests. The specific information sought by the petitioners is as follows:

(1) Ledgers or other accounting records of SWS that contemporaneously recorded the transfer of funds from Lackawanna to SWS from 2001 through 2009;

(2) Detailed year-end financial statements (prepared by outside accountants, if available) for SWS for each of the years 2000–2009;

(3) I.R.S. Forms 1120S for SWS for each of the years 2000–2009;

(4) Identification of those items in the financial statements and tax returns of SWS that include funds transferred to or from Lackawanna and that stated purpose of such transfers; and

(4) As to each tax return of SWS, identification of each entry therein that includes transfers from or to Pasquale Mascaro and the purpose thereof.

i.e., liquid runoff from the landfill, and the prevention of erosion. *See* 40 C.F.R. § 258 (2012). Closure costs are accumulated while the landfill

On October 13, 2011, the Commission entered an order compelling the respondents to produce the information that has been requested of them during discovery by Wetzel County. The respondents did not comply with that order. Thereafter, the petitioners filed their petition for writ of mandamus with this Court.

## II. STANDARD FOR ISSUANCE OF A WRIT OF MANDAMUS

■ This Court has held that "[a] writ of mandamus will not issue unless three elements coexist-(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syllabus Point 2, *State ex rel. Kucera v. The City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969). With this standard in mind, the petition for writ of mandamus will be considered.

## III. DISCUSSION

■ The petitioners argue that a writ of mandamus should be issued because the Commission has broad investigatory authority that includes the power to require the disclosure of records of a utility's related company(s). In that regard, the petitioners note that W. Va.Code § 24–2–2 (1998) (Repl. Vol.2008) empowers the Commission to "investigate all rates, methods, and practices of public utilities." In addition, W. Va.Code § 24–2–3 (1983) (Repl.Vol.2008) provides that "[i]n determining just and reasonable rates, the commission shall investigate and review transactions between utilities and affiliates."

The petitioners further contend that the respondents are legally required to produce the information that has been requested. The petitioners point out that the Commission has specific statutory authority to demand that a utility provide information regarding the profits earned by its non-utility affiliates in transactions with the utility. In particular, W. Va.Code § 24–2–3 further provides, that "[t]he commission shall limit the

is in operation because when the costs are actually incurred, the landfill is no longer producing income.

total return of the utility to a level which, when considered with the level of profit or return the affiliate earns on transactions with the utility, is just and reasonable." W. Va. Code § 24–2–9 (1991) (Repl.Vol.2008) also states:

The commission may at any time require persons, firms, companies, associations, corporations or municipalities, subject to the provisions of this chapter, to furnish any information which may be in their possession, respecting rates, tolls, charges or practices in conducting their service, and to furnish the commission at all times for inspection any books or papers or reports and statements, which reports and statements shall be under oath, when so required by the commission[.]

Based upon this statutory language, the petitioners conclude that the respondents are required to produce the requested information.

The petitioners acknowledge that they could have possibly sought relief in the circuit court pursuant to W. Va.Code § 24–2–10 (1923) (Repl.Vol.2008)[4] which provides that the Commission may seek enforcement in circuit court of a "subpoena or other process" to compel the appearance of witnesses or the production of documents at a hearing.[5] They maintain, however, that a writ of mandamus is the proper remedy pursuant to W. Va. Code § 24–2–2, which expressly states that the Commission "may compel obedience to its lawful orders by mandamus or injunction or other proper proceedings in the name of the state in any circuit court having jurisdic-

tion of the parties or of the subject matter, *or the Supreme Court of [A]ppeals direct*[.]" (Emphasis added). The petitioners reason that a writ of mandamus issued by this Court is appropriate in this instance to minimize any further delay in the underlying proceeding, stating that they are confident that any order issued by the circuit court would be appealed.

To the contrary, the respondents argue that the petitioners must first seek relief through the circuit court. The respondents assert that W. Va.Code § 24–2–10 clearly provides the mechanism for dealing with discovery disputes—an order from the circuit court compelling the discovery at issue to be produced at a hearing before the Commission. Therefore, the respondents contend that a writ of mandamus is not appropriate in this instance because another remedy exists. In further support of their contention that a writ of mandamus should not be issued under these circumstances, the respondents point out that until this case, the Commission has only invoked this Court's mandamus jurisdiction under W. Va.Code § 24–2–2 in cases involving the enforcement of dispositive and/or substantive orders against utilities subject to the Commission's jurisdiction, citing *State ex rel. Public Service Comm'n v. Gore Water Assoc.*, 193 W.Va. 555, 457 S.E.2d 492 (1995) (court issued writ of mandamus to compel water utility to comply with Commission's unappealed order finding that it was a public utility and requiring it to apply for a certificate of public necessity); *State ex rel. Public Service Comm'n v. Indi-*

---

4. W. Va.Code § 24–2–10 states in its entirety:

The commission shall have power, either as a commission or by any of its members, to subpoena witnesses and take testimony, and administer oaths to any witness in any proceeding or examination instituted before it or conducted by it with reference to any matter within its jurisdiction. In all hearings or proceedings before the commission the evidence of witnesses and the production of documentary evidence may be required at any designated place of hearing; and in case of disobedience to a subpoena or other process the commission or any party to the proceedings before the commission may invoke the aid of any circuit court in requiring the evidence and testimony of witnesses and the production of papers, books and documents. And such court, in case of refusal to obey the subpoena issued to any

person or to any public utility subject to the provisions of this chapter, shall issue an order requiring such public utility or any person to appear before such commission and produce all books and papers, if so ordered, and give evidence touching the matter in question. Any failure to obey such order of the court may be punished by such court as contempt thereof. A claim that any such testimony or evidence may tend to criminate the person giving the same shall not excuse such witness from testifying, but such witness shall not be prosecuted for any offense concerning which he is compelled hereunder to testify.

5. The discovery at issue here is interrogatories and document requests.

an Creek Gas Co., 154 W.Va. 835, 179 S.E.2d 574 (1971) (court refused to issue a writ of mandamus involving Commission's effort to secure enforcement of an order requiring a gas utility to elect someone to direct its operations); State ex rel. Public Service Comm'n v. Willis, 150 W.Va. 175, 144 S.E.2d 630 (1965) (court issued writ of mandamus to compel a water utility to connect to another water system).

The respondents further argue that the Commission has no jurisdiction to compel the disclosure of tax returns and audited financial statements of a non-utility, SES, and thus, the petitioners have no right to the relief they seek. The respondents contend that W. Va.Code § 24-2-3 has no application here because SWS's tax returns and financial statements do not constitute "transactions" between SWS and Lackawanna. Respondents also state that W. Va.Code § 24-2-9 does not apply either because SWS's tax returns and audited financial statements are unnecessary for the Commission to determine the amount required to satisfy Lackawanna's potential closure and post-closure obligations. Further, the respondents maintain that these documents are simply not needed to address the closure escrow account issue at hand, advising that they have provided a voluminous amount of material in discovery responses that is more than sufficient to properly address the establishment and funding of the escrow account for the Wetzel County Landfill, which is the only issue remaining in the pending investigative case. The respondents also note that Lackawanna has been ready and willing for almost a decade now to enter into an escrow account agreement for its landfill and actually reached a settlement agreement pertaining thereto with Commission staff as part of the 2007 rate case, but for unknown reasons, the Commission did not act upon or approve the agreement.

Finally, the respondents point out that Lackawanna is up-to-date on its closure obligations for the landfill with the West Virginia Department of Environmental Protection (hereinafter "DEP"). As required by the DEP, Lackawanna has posted with the DEP and the State a $676,000 landfill closure surety bond from Safeco Insurance Company of America as a financial guarantee for required closure activities in the event the Lackawanna fails to perform them itself.[6] Thus, respondents conclude that the requested writ of mandamus should be denied.

■ This Court has long held that "[m]andamus is the proper remedy to compel a public utility to comply with a lawful order of the Public Service Commission of this State." Syllabus, State ex rel. Public Service Comm'n v. Willis, 150 W.Va. 175, 144 S.E.2d 630 (1965). Having carefully considered the parties' arguments and the applicable law, this Court finds the requisite elements for the issuance of writ of a mandamus have been satisfied.

First, the petitioners clearly have a legal right to the relief they seek. Contrary to the assertions of the respondents, the Commission has broad statutory authority that allows it to compel the production of the information that has been sought during discovery in the underlying proceeding. The October 13, 2011, order of the Commission indicates that the scope of the general investigation instituted on May 14, 2010, includes "the rates and practices of [Lackawanna] and SWS in connection with the operation of the Wetzel County Landfill." While SWS has not yet been determined to be a "utility," SWS is nonetheless an affiliate of Lackawanna, and the applicable statutes allow the Commission to "investigate and review transactions between utilities and affiliates" in determining just and reasonable rates. W. Va. Code § 24-2-3. Moreover, the investigative power conferred upon the Commission by W. Va.Code § 24-2-2 allows it to require "copies of all reports, rates, classifications, schedules and timetables in effect and used by the public utility or other person, to be filed with the commission, and all other information desired by the commission relating to the investigation[.]" (Emphasis added). While this Court is certainly mindful of the fact that the reasonableness of Lackawanna's current landfill rates is no longer an issue in

---

**6.** The Commission notes in its brief that it is troubled by the bond amount given the anticipated costs of closure "which may reach $5 million."

the underlying investigation,[7] the prior transactions between Lackawanna and SWS, whereby the latter was charging a higher disposal rate to its clients than it was paying to Lackawanna, is at the heart of the investigation which is aimed at determining whether the contractual arrangement between Lackawanna and SWS has resulted in the inadequate funding by Lackawanna of closure and post-closure costs, whether an escrow account for said costs should be established and, if so, the amount required to fund it. As such, this Court finds the petitioners have a clear legal right to the information sought through the discovery requests and that for the same reasons, the respondents are legally required to produce the requested information. While the record does show that the respondents have provided a voluminous amount of documents to the petitioners, it is clear from the Commission's orders and the submitted record that the specific information sought through this petition for a writ of mandamus has not been provided.[8]

■■■ While arguably there is another remedy available in this instance through the circuit court, this Court finds that said remedy is not an adequate remedy given the unique circumstances present here. As discussed above, the discovery information at issue was initially sought as part of the 2007 rate case, and the respondents' failure to respond to the discovery requests resulted in the dismissal of that case. The underlying proceeding was then instituted in 2008 and the discovery requests at issue were made after the investigative case was opened in 2010. In essence, this discovery dispute has been ongoing for more than five years. It is clear that were this Court to deny the writ of mandamus sought by the petitioners and direct the parties to circuit court, the matter would eventually return to this Court on appeal. This Court has held that " '[w]hile it is true that mandamus is not available where another specific and adequate remedy exists,

if such other remedy is not equally as beneficial, convenient, and effective, mandamus will lie.' Syllabus Point 4, *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981)." Syllabus Point 3, *State ex rel. West Virginia Parkways Authority v. Barr*, 228 W.Va. 27, 716 S.E.2d 689 (2011). Without question, such other remedy is not equally as beneficial, convenient and effective in this case. Therefore, the requested writ of mandamus will be issued.

## IV. CONCLUSION

For the reasons set for above, the requested writ of mandamus is hereby granted.

Writ granted.

Justice BENJAMIN dissents and reserves the right to file a dissenting opinion.

BENJAMIN, Justice, dissenting:

I dissent to the majority opinion because the petitioners have not met the necessary elements for the issuance of a writ of mandamus.

First, the petitioners have not shown a clear legal right to the relief that they seek. The majority opinion sets forth two statutes which allegedly provide the legal bases for the petitioners' requests. Specifically, W. Va.Code § 24–2–3 authorizes the Public Service Commission to limit a utility's total return to an amount which is just and reasonable. Also, W. Va.Code § 24–2–9 empowers the Commission to obtain from parties subject to the Commission's authority information regarding rates, tolls, charges or practices in conducting their service. The majority opinion fails to explain, however, how these statutes give the Commission the power to require Solid Waste Services, an out-of-state non-utility, to disclose specific and detailed financial information for the years 2000–2009.

---

7. The October 13, 2011, order of the Commission explains that Wetzel County and Commission staff requested that the Commission remove the question of whether Lackawanna's current landfill rates are unreasonable from the scope of the investigation, noting that the petition in the case was not intended to suggest that the current rate was unreasonable and that "a Rule 42A proceed-

ing would be the proper vehicle for a rate increase."

8. In the October 13, 2011, order, the Commission required Wetzel County to review and restate its interrogatories, narrowing the questions to eliminate an unnecessary duplication of previously answered interrogatories.

Second, the petitioners have not shown the absence of another adequate remedy. Significantly, the majority opinion acknowledges that the petitioners have another remedy available in that W. Va.Code § 24–2–10 provides a mechanism whereby the circuit court can compel the discovery at issue to be produced at a hearing before the Commission. The majority opinion summarily concludes, however, that this remedy would not be as equally beneficial, convenient, and effective.

This Court's traditional practice is to stringently require parties seeking mandamus relief to prove the co-existence of the three elements articulated in Syllabus Point 2 of *State ex rel. Kucera v. The City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969). Quite recently, this Court characterized a petition for mandamus relief as an extraordinary form of relief that is "designed to remedy miscarriages of justice and [has] consistently been used sparingly and under limited circumstances." *State ex rel. Cooper v. Tennant*, 229 W.Va. 585, 730 S.E.2d 368, 376 (2012). The majority opinion's departure from this standard in the instant case is troubling.

In sum, the majority opinion's liberal and overly broad use of mandamus as a mere substitute for circuit court review of a run-of-the-mill discovery dispute violates the extraordinary nature of mandamus relief, our well-settled law governing mandamus provided in *State ex rel. Kucera v. The City of Wheeling*, and this Court's traditional practice in granting mandamus relief sparingly and only under limited circumstances. For these reasons, I respectfully dissent.